# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| HIGH SCHOOL SERVIÇOS EDUCACIONAIS, LTDA, a Brazilian company,<br><br>       Plaintiff,<br><br>   v.<br><br>MUN Y. CHOI, individually and in his capacity as the President and Chancellor of the University of Missouri;<br>    Serve at:<br>    321 University Hall<br>    Columbia, MO 65211<br><br><br>MIZZOU ACADEMY aka MIZZOU K-12 / UNIVERSITY OF MISSOURI HIGH SCHOOL;<br>    Serve at:<br>    101 E Townsend Hall<br>    Columbia, MO 65211<br><br><br>THE CURATORS OF THE UNIVERSITY OF MISSOURI, a Public Corporation;<br>    Serve at:<br>    316 University Hall<br>    Columbia, Missouri 65211<br><br><br>JULIA G. BRNCIC, in her official capacity as a Member of the Board of Curators;<br><br><br>DARRYL M. CHATMAN, in his official capacity as a Member of the Board of Curators; | Case No.<br><br><br><br><br><br><br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

MAURICE B. GRAHAM, in his official
capacity as a Member of the Board of
Curators,

GREG E. HOBEROCK, in his official
capacity as a Member of the Board of
Curators;

JEFFREY L. LAYMAN, in his official
capacity as a Member of the Board of
Curators;

PHILLIP H. SNOWDEN, in his official
capacity as a Member of the Board of
Curators;

DAVID L. STEELMEN, in his official
capacity as a Member of the Board of
Curators;

ROBIN R. WENNEKER, in her official
capacity as a Member of the Board of
Curators;

MICHAEL A. WILLIAMS, in his official
capacity as a Member of the Board of
Curators;

INTERNATIONAL EDUCATION
ASSOCIATES, LLC., a Missouri limited
liability company ("IEA");
    Serve at:
    316 University Hall
    Columbia, Missouri 65211

ERICA LEMBKE in her official capacity
as Interim Dean of Education of the
University of Missouri;

KATHRYN CHVAL, in her individual
and official capacity as a Director of IEA
and/or as former Dean of the Department
of Education of the University of
Missouri;

ANGELA HAMMONS,
individually;

TAMARA REGAN,
individually;

KATHRYN FISHMAN-WEAVER,
individually;

STEPHANIE P. WALTERS,
individually;

THITINUN BOONSENG, individually;

and DOES 1-100.

      Defendants.

## COMPLAINT

Plaintiff, High School Serviços Educacionais, LTDA, states the following as its Complaint against Defendants.

## PARTIES

1.     Plaintiff, High School Serviços Educacionais, LTDA (hereinafter "HSE") is a Company registered in the Federative Republic of Brazil, with its principal place of business located at Av. Rio Branco, 274 – Loja 50 – Santa Lúcia, Vitória – ES, 29056-910, Brazil.

2.     Defendant, Mun Y. Choi (hereinafter "Choi") has been the President and Chancellor of the University of Missouri since March 2017, with control over the University of

Missouri College of Education and the Mizzou Academy (formerly known as Mizzou K-12 Online; hereinafter "MK12"). He is sued herein in his official and individual capacities.

3.      At all times material hereto, the Curators of the University of Missouri (hereinafter "CURATORS"), were and are a Public Corporation registered in Missouri, with its principal place of business located at 316 University Hall, Columbia, Missouri, 65201.

4.      The individuals identified herein as the CURATORS are the current Members of the Board of Curators of the University of Missouri. They have the power and ability to control the continuance or discontinuance of the continuing infringement of works in which Plaintiff owns the intellectual property rights, and with the power and ability to control the continuance or discontinuance of the continuing appropriation and use of trade secret(s) of the Plaintiff. They are sued herein in their official capacities.  The CURATORS have waived sovereign immunity in accordance with R.S. Mo. 537.610 by purchasing liability insurance that covers the claims alleged herein.

5.      The party identified herein as Mizzou Academy aka Mizzou K-12 / University of Missouri High School (hereinafter "MK12")  is an independent, private school , is a self-funded business or operating unit that operates without any formal recognition from the State of Missouri, and does not receive appropriations or funding from the CURATORS.   It is a K-12 private school that was first accredited by COGNIA as a private school on or about January 15, 2003.  MK12 either alone or as a joint venture or partnership with International Education Associates, LLC (hereinafter "IEA"), and/or other DOE Defendants caters to, and operates for the benefit of, non-university level students, including nonresidents of the State of Missouri and non-residents of the USA. Furthermore, the laws of Missouri do not view the entity as an arm of the state; it operates with autonomy; and the entity is concerned with other states' students and international students, and not only with Missouri students. Since the strings for this entity are

not tied to the State of Missouri, and MK12's operation is a proprietary function, this entity does not enjoy sovereign immunity under the United States Constitution, federal law, or any state law.

6.     International Education Associates, LLC, (hereinafter "IEA") is now, and at all times relevant hereto was, a Missouri Limited Liability Company in good standing in the State of Missouri. At the time of the events alleged herein, it was  a separate Missouri entity.   Upon information and belief it is an independent operation which has no official authorization from the State of Missouri, and does  not receive appropriations or funding from the CURATORS. This entity caters to, and operates for the benefit of, non-university level students including those who are not residents of the State of Missouri or the USA. Since the purse strings for this entity are not tied to the State of Missouri, and IEA's operation is a purely proprietary function, this entity does not enjoy sovereign immunity under the United States Constitution, federal law or any state law.

7.     Angela Christine Hammons (hereinafter "Hammons") isnow and at all times relevant hereto was the Director of Curriculum Development & IT for MK12 since November 2018, was at all times  in operational and technological positions at MK12 relevant hereto, and is residing in the State of Missouri. She is sued herein in her individual capacity.

8.     Tamara Lynn Regan (hereinafter "Regan") is now and at all times relevant hereto was Business Director for MK12, was at all times in financial and operational positions at MK12 relevant hereto, and is residing in the State of Missouri. She is sued herein in her individual capacity.

9.     Kathryn Eva Fishman-Weaver (hereinafter "Fishman-Weaver") is now and at all times relevant hereto was a Director of MK12, was at times in curricular, academic and pedagogical leadership positions at MK12 relevant hereto, and is residing in the State of Missouri. She is sued herein in her individual capacity.

10.     Stephanie Paige Walter (hereinafter "Walter") is now and at all times relevant hereto was an instructor and author of academic materials for MK12, and is residing in the State of Missouri. She is sued herein in her individual capacity.

11.     Defendant DOES #1-5 are the current active Directors of IEA who are sued herein in their official and individual capacities.

12.     Kathryn Bouchard Chval (hereinafter "Chval"), is the former Dean of Education of the University of Missouri who, upon information and belief, did approve of the taking, infringement and/or misappropriation of Plaintiff's intellectual property. She was also a Director of IEA at the time of the events alleged herein. She is sued herein in her official and individual capacities.

13.     Upon information and belief, Erica Lembke (hereinafter "Lembke"), is the current Interim Dean of the University of Missouri College of Education, with the ability to discontinue the continuing misappropriation of Plaintiff's trade secrets and the ability to discontinue the infringement of Plaintiff's intellectual property rights. She is sued herein in her official capacity.

14.     Upon information and belief, Renata Assi Vaccari (hereinafter "Vaccari"), is a representative of MK12 and/or IEA, and acts as a conduit of MK12 in carrying out their directions and proprietary function in Brazil. She is the owner of a company in Brazil called "MZ Educação", which is listed in MK12's website as their partner in Brazil. According to MK12's website, "Mizzou Academy works together with MZ Educação, that provides on-site support all over the country, with an office in São Paulo – SP." She is sued herein in her official and individual capacities. (See **Exhibit 1**.)

15.     Upon information and belief, Thitinun Boonseng (hereinafter "Boonseng") was, at the time of the events alleged herein directly or indirectly, equity holder in, investor in, or joint venture partner with IEA. He is sued herein in his individual capacity.

16.     The defendants named herein as DOES #6-20, are other persons, either individuals or entities, who either play or played a role in creating fake and inflated billings to Plaintiff or IEA's joint venture partners also described as "investors" who are jointly and severally liable to Plaintiff for Plaintiff's damages.

17.     The defendants named herein as DOES #21-100, are other persons, either individuals or entities, who played some culpable role in the infringement, contributory infringement and/or misappropriation of Plaintiff's intellectual property rights. They also include, but are not limited to, new or replacement members of the CURATORS who may also have the power to continue or discontinue the continuing infringement by other named Defendants. When these other parties are identified their names will be substituted in place of their DOE identities.

## JURISDICTION AND VENUE

18.     This case also involves federal questions under the laws or treaties of the United States and the court has original subject matter jurisdiction under 28 U.S.C. §§1331 and 1338(a) under the U.S. Copyright Act, 17 U.S.C. §101, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §1202, and the Defend Trade Secrets Act of 2016 ("DTSA), 18 U.S.C. §1836.

19.     This court has supplemental jurisdiction over all other claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §1367.

20.     Venue is properly placed in this Court under 28 U.S.C. §1391 since at least one of the Defendant(s) is deemed to reside in this judicial district.

## FACTS

21.     Since 2008 and at all times material, Plaintiff HSE has conducted business in Brazil in contract with universities located in the United States with the purpose of providing Brazilian

K-12 schools and students with a curriculum aligned with the United States educational system, which included a United States high school diploma and a matriculation pathway for undergraduate admission into a recognized university or other public or private higher education institution within the United States.

22.    On or about April 27, 2015, Plaintiff HSE entered into a Mutual Non-Disclosure Agreement ("MNDA") with the CURATORS. (See MNDA attached hereto as **Exhibit 2**.)

23.    On or about May 4, 2015, Plaintiff HSE entered into two (2) other agreements with the CURATORS, including a Memorandum of Understanding and Licensing Agreement ("MOU") and an Intellectual Property Agreement ("IPA"), agreeing to, among other things, the terms of use by each of the respective parties' of previously developed intellectual property, and intellectual property that would be jointly developed during the parties' relationship. (See MOU and IPA attached hereto as **Exhibits 3 and 4, respectively**.) These agreements emphasized the importance of the intellectual property rights in the parties' relationship.

24.    Neither the MNDA, the MOU, nor the IPA specified the amount of any monetary consideration to be paid by one party to the other during the parties' contract relationship, however both parties benefited from the relationship with both the University of Missouri and MK12 being able to become better known internationally in the hopes of attracting future college students to the University of Missouri, or being a direct recruitment "pipeline," and with MK12 having received large sums of money from HSE's operations in Brazil.

25.    Plaintiff HSE and Defendant MK12 informally worked together without any definitive written agreement to establish reasonable payments from HSE to MK12 ("Payment Protocol"), and from MK12 to HSE, so long as both MK12 and HSE were acting in good faith in fulfilling the terms of the MOU and other agreements.

26.     The Plaintiff paid MK12 millions of dollars for the years 2015, 2016, 2017, 2018, and 2019, even without a "Payment Protocol" and without receiving corresponding invoices from MK12.

27.     On May 12, 2018, Defendant MK12 surprised Plaintiff HSE with a preliminary invoice for $4,085,048.00, which included unexpected retroactive billing for years in which MK12 had already received compensation, including for the years 2015, 2016 and 2017.

28.     On or about January 1, 2019, Defendant MK12 again surprised Plaintiff HSE with another invoice, replacing the preliminary version of the invoice, this time for $5,162,638.00 which also included retroactive billing dating back to 2015.

29.     MK12's invoices for retroactive services were not based on any written agreement signed by HSE or any non-written agreement between HSE and MK12, and, upon information and belief, included inflated charges to HSE.

30.     Plaintiff HSE responded to Defendant MK12's invoices by denying that such amounts were owed and asserting that the previously agreed upon amounts had already been remitted to MK12 in a timely manner.

### HSE'S OPERATIONAL MANUAL

31.     Years prior to its relationship with MK12, Plaintiff HSE developed a proprietary handbook/operational manual (hereinafter "Operational Manual") to be used by HSE in conjunction with a U.S. partner university in providing its programs to Brazilian K-12 students.

32.     Plaintiff HSE originally compiled the "Operational Manual" in Portuguese, the native language of Brazil, for internal use only.

33.     A version was prepared annually, beginning in December 2010, and continuing in December 2011 and December 2012. An English language version was prepared in December 2013 and 2014. The Plaintiff's "Operational Manual" was distributed only to people with whom

HSE had an agreement or other obligations of confidentiality and/or other restrictive provisions limiting the use of the "Operational Manual".

34.     The referenced "Operational Manual" is entitled to copyright protection and contained one or more copyright protected photographs owned by HSE.

35.     The "Operational Manual" compiled by HSE in or around December 2014 was titled "2015 HSE Operational Manual" for use in the upcoming year.

36.     On May 22, 2015, shortly after the MNDA was signed between the parties, Defendants acknowledged the value of the proprietary "Operational Manual" that had been developed by Plaintiff. Tanya Haeussler sent an email to HSE stating as follows: "Zac and I are sitting at the airport going over the copy of the operation manual and making lots of notes. Would you be able to make this available on the Google Drive? We would like our staff to read it too. Honestly, this is an amazing document. Both of us appreciate the detail that is covered." (attached hereto as **Exhibit 5.**)

## THE HEIST OF THE HSE OPERATIONAL MANUAL

37.     The parties' five (5) year contract relationship was into its fourth year when on or about January 4, 2019, Haeussler, Senior Director of MK12, sent an email marked "HIGHLY CONFIDENTIAL" to Defendants Hammons, Regan, Fishman-Weaver, and Walter, giving them a link to the "INTERNAL 2019 MK12 Operation Manual Google Doc" and requesting them to "go through the entire document and make sure any changes that are needed are included, including removing all HSE references." (That email is attached hereto as **Exhibit 6**.)

38.     The recipients of the January 4, 2019, email were also asked to engage other individuals in confidence as necessary to edit the document but were warned to "be circumspect in who you ask to help update this document. They need to CLEARLY understand what we are intending to do, and understand this is highly confidential."

39.     On March 12, 2019, it was announced by email that the changes in the "INTERNAL 2019 MK12 Operation Manual Google Doc" had been completed, and stated that "in light of the IP concern with HSE, the "Operational Manual" has been completely revised and we now have a DRAFT 2020 Mizzou Academy Handbook."

40.     By the date of the March 12, 2019, email, the confidential group of individuals participating in the illegal activities had grown to include not only Defendants Hammons, Regan, Fishman-Weaver, and Walter but also other MK12 agents who participated or condoned the removal of HSE references from the Plaintiff's "Operational Manual" and/or the insertion of the Mizzou Academy Handbook in its place.

41.     All members of the confidential group were aware that MK12 was working with HSE in Brazil at the time of these events and nevertheless chose to engage in illegal acts in violation of federal laws.

42.     In spite of the group's efforts to erase the name of HSE and other copyright management information ("CMI") from the Plaintiff's "Operational Manual" in such a nefarious and secret manner, the group left in the updated revision of the resulting "2020 Mizzou Academy Handbook" a copyright protected photograph belonging to HSE, multiple pieces of text, and other various tell-tale signs of copying and plagiarism.

## THE HEIST OF HSE'S CONTACT LIST

43.     The Plaintiff developed and maintained over many years an electronic file, i.e. in essence a computerized customer contact list (hereinafter "Contact List"), of its partner schools, along with contact names, email addresses, and mobile phone numbers of the individuals who are the important decision makers and important contacts in various capacities at their partner schools.

44.     The Plaintiff's "Contact List" of important decision makers was developed gradually and continuously over many years of dealing with the various schools and school personnel in Brazil.

45.     The Plaintiff took steps to protect its "Contact List" and provided it only to its contacting partners on a need-to-know basis under the terms of a non-disclosure agreement. An earlier less-developed spreadsheet list had been provided to Texas Tech University under the assurance that it would be used in confidence.

46.     On January 7, 2019, three days after it started making an unauthorized derivative work of HSE's "Operational Manual", Tanya Michiko Haeussler (hereinafter "Haeussler"), Senior Director for MK12, sent the following email to Maria Isabel Morandi (hereinafter "Morandi") of HSE requesting an updated electronic file of all schools and coordinators under the guise and false pretense that they needed the "Contact List" to carry out their contract obligations with HSE for 2019. It was done under false pretense since MK12 had already determined to discontinue its business with Plaintiff and had already started to delete HSE references from HSE's "Operational Manual" so that it could be used as their own. MK12 knew it had no independent right to the information and that it was protected from use by Defendants under the terms of the MNDA. (See email attached hereto as **Exhibit 7**.)

47.     HSE'S Morandi complied with MK12's Haeussler request, but had Morandi known that MK12 was in the process of stealing HSE's intellectual property and that the true intent was to use the "Contact List" to immediately begin competing with HSE, she would not have provided the confidential electronic file of contact information to MK12.

48.     MK12 utilized the "Contact List" and/or other proprietary information of HSE to contact HSE's partner schools at least as early as February 2019 and otherwise solicited and pressured HSE's partner schools to abandon their relationships with HSE.

## THE FLIP

49.     On or about February 14, 2019, MK12 sent an email to all of HSE's partner schools in Brazil (without HSE's knowledge or consent) with the subject line "**Mizzou For You in 2020**." (See February 14, 2019 email attached hereto as **Exhibit 8**.)  MK12 characterized this secretly as **"The Flip"**. HSE was not copied on the email and was not given any advance notice or warning that their partner schools were being notified or that an email was being sent. The information used by MK12 to identify the appropriate school contacts in Brazil was based on confidential material obtained from Plaintiff in confidence and under a duty of confidentiality in violation of the MNDA, the MOU, and the IPA.

50.     On that same date, and **only** after sending the above-mentioned e-mail to HSE's partner schools, MK12 sent a letter of termination to HSE providing a one-year advance written notice that the MOU and IPA were being terminated as of February 14, 2020, exactly one year from the date of the letter. (See **Exhibit 9.**)

51.     The February 14, 2019 email to HSE's partner schools in Brazil was followed by a second email on February 19, 2019 to the Brazilian schools with the subject line "**Mizzou Meeting Announcement Changes**."

52.     On or about February 15, 2019, Defendant MK12 sent additional email correspondence to Plaintiff's partner-schools requesting their attendance at two meetings which were to occur on or about February 25, 2019 and February 26, 2019 in Brazil.

53.     On February 19, 2019, HSE, after learning of Defendant MK12's actions by and through its counsel, responded and sent a letter to MK12 demanding that MK12 cease and desist their illegal and unlawful competition in Brazil. (See **Exhibit 10.**)

54.     The legal basis for the cease and desist letter was not only that it was in breach of the terms of the agreements between the parties, but also that it was a violation of Article 195 of

Brazilian Law 9.279/96 that makes unlawful competition a criminal act in Brazil. Undeterred, MK12 ignored the letter and continued their actions.

55.     Defendant MK12 knows or should have known that its actions were contrary to and in breach of the agreements between the CURATORS and the Plaintiff, HSE.

56.     On April 12, 2019, Defendant MK12, through its Executive Director Zachary March, sent out electronic brochures to HSE partner schools in both Portuguese and English, referred as "comparison tables", that advertised that its educational services, if any, to be made available through HSE would be greatly "reduced and limited," as March admitted, and thus inferior to its own services which would be necessary for the then existing Brazilian students participating in the MK12 program to graduate with a U.S. high school diploma or to obtain a U.S. middle school certificate. According to the email and the email attachment, "Schools working with a ThirdParty Vendor for Mizzou services will have a much reduced and limited academic experience due to institutional restrictions and considerations." (See **Exhibit 11**) .

## CLAIMS FOR RELIEF

## <u>FIRST CLAIM FOR RELIEF - BREACH OF CONTRACT ("MOU")</u>
**(Against MK12 and CURATORS)**

57.     Plaintiff HSE hereby incorporates by reference all of the previous allegations of this Complaint as if restated in full herein.

58.     Section III.1 of the MOU provides that HSE will handle all logistic[al] issues related to introduction and promotion of the program in Brazil during the period of the MOU.

59.     MK12's conduct of circumventing HSE and contacting the Brazilian schools directly in 2019, breached the terms of the MOU because MK12 was promoting their new program and not the parties' joint program in Brazil during the term of the MOU, which among other things usurped HSE's logistics role as specified in the MOU.

60. Section V.3(1) of the MOU provided that HSE was the contracting party that was allowed to continue recruiting schools for the HSE-MK12 joint program until December 31st of the year of termination which included the time period through December 31, 2019.

61. Since CURATORS and MK12 provided their Notice of Termination of the MOU (on February 14, 2019) to take effect on February 14, 2020 (see **Exhibit 9**), and began recruiting HSE's customers (Brazilian partner schools and Brazilian students) to its own program(s), MK12 breached the terms of the MOU by interfering with HSE's right to continue recruiting new schools for the joint program until at least December 31, 2019. (See V.3(1)(b)).

62. MK12's conduct of circumventing HSE and contacting and recruiting HSE's partner Brazilian schools and Brazilian students directly for their own benefit breached the terms of the MOU.

63. Section III.4 of the MOU requires MK12 and HSE to cooperate in carrying out the terms of the MOU and the joint program to Brazilian students.

64. MK12's conduct of circumventing HSE and contacting HSE's partner Brazilian schools directly, breached the contract provision of the MOU that requires the parties to cooperate with each other in carrying out the objectives of the MOU.

65. As a result of CURATORS's and MK12's breach(es) of contract, the Plaintiff has lost the benefit of its bargain and has incurred damages in an amount in excess of $75,000.00.

## SECOND CLAIM FOR RELIEF - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ("MOU")
### (Against MK12 and CURATORS)

66.     Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

67.     Section V.2 of the MOU states that "[t]his agreement will be in effect from July 1, 2015 to June 30, 2020." Section V.3 of the MOU states that this agreement may be terminated by either party with one-year written notice to the other party, with such notice to be given by June 30th of a given year and the termination of the agreement will occur one year later.

68.     The foregoing contract provisions only permit a termination to take effect on or about June 30th which coincides with the annual educational and semester enrollment cycle.

69.     By providing HSE with a written notice of termination to take effect February 14, 2020, MK12 breached the terms of the MOU.

70.     MK12 used express contract terms in the MOU, i.e. that it could terminate with one year of the notice, in bad faith, to deny Plaintiff the expected contract benefit of a specific termination window to evade the spirit of the transaction.

71.     As a result of CURATORS's and MK12's breach(es) of contract, the Plaintiff lost the benefit of its bargain and has incurred recoverable damages in an amount in excess of $75,000.00.

## THIRD CLAIM FOR RELIEF - BREACH OF CONTRACT ("IPA")
### (Against MK12 and CURATORS)

72.     Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

73.     The IPA was drafted, in part, to allow each party to protect its own separate proprietary intellectual property and to limit, after termination of the MOU, the use of derivative materials created during the parties' relationship.

74.     Section 1.01 of the IPA defines "BACKGROUND IP" to mean "the INTELLECTUAL PROPERTY first developed by a PARTY prior to or otherwise outside of the collaboration set forth in the MOU."

75.     Part of the BACKGROUND IP that HSE brought to the contract relationship with MK12 was its electronic "Contact List" file. The "Contact List" included the important contact information for the decision makers and other important contacts within the Brazilian school system. HSE protected this information from unpermitted disclosure by the terms of the MNDA, MOU, and IPA.

76.     HSE also brought to the contract relationship additional BACKGROUND IP consisting of its "Operational Manual" which is indispensable in carrying out the dual degree program with Brazilian schools. HSE protected this information from unpermitted disclosure by the terms of the MNDA, MOU, and IPA.

77.     MK12 copied and plagiarized Plaintiff HSE's "Operational Manual" without permission, and removed all HSE references so that any recipient would not know that it was HSE's copyright protected material because important copyright management information and direct references to HSE had been removed from the text.

78.     MK12's unauthorized derivative manual named "2020 Mizzou Academy Handbook" contained a copyright protected photograph of HSE, besides copied, plagiarized or unchanged content from HSE's "Operational Manual", and other evidence that HSE's "Operational Manual" had merely been copied for use and distribution by MK12, including the sequence in which each subject is presented.

79.     MK12 has used HSE's intellectual property without HSE's consent in violation of the terms of Section 2.01(a) of the IPA signed with CURATORS, which provides, with respect to the ownership of BACKGROUND IP, that "[e]ach PARTY acknowledges and agrees that, as between the PARTIES, each PARTY is and shall remain the sole and exclusive owner of all right, title, and interest in and to its BACKGROUND IP, and that this AGREEMENT does not affect such ownership. Each PARTY acknowledges that it acquires no right under this AGREEMENT to the other PARTY's BACKGROUND IP other than as specifically granted in this AGREEMENT."

80.     By using Plaintiff's BACKGROUND IP including its "Contact List" and "Operational Manual", CURATORS and MK12 have breached the terms of the IPA.

81.     In addition, Defendants also took Jointly Owned Intellectual Property that only had a license to be used in Brazil under the IPA, specifically a jointly developed course named "Study Skills". This Study Skills course was slightly modified by MK12 and disseminated to Brazilian students without Plaintiff's permission thus further violating the IPA.  A side by side comparison of the original and modified version of the Study Skills course is attached as **Exhibit 12**).

82.     As a result of CURATORS' and MK12's breach(es) of the IPA, the Plaintiff lost the benefit of its bargain and has incurred recoverable damages in an amount in excess of $75,000.00.

### <u>FOURTH CLAIM FOR RELIEF - BREACH OF CONTRACT ("MNDA")</u>
**(Against MK12 and CURATORS)**

83.     Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

84.     The terms of the Mutual Non-Disclosure Agreement between Plaintiff HSE and Defendants MK12 and CURATORS provided "Use Limitations" for any of HSE's INFORMATION that was provided to CURATORS, via MK12. INFORMATION was defined as

information not generally known to the public provided to the receiving Party by the disclosing Party. INFORMATION may be conveyed in written, graphic, oral, physical or electronic form. Consistent with the definition set forth above, INFORMATION includes, but without limitation, data, research, technology, biological materials, samples, discoveries, inventions, techniques, formulae, products, processes, procedures, know-how, models, visual or audio recordings, drawings designs, software, algorithms, tools, methods, non-published patent applications, trade secrets, technical and nontechnical materials and specifications, and other results and outcomes which the disclosing Party has delivered to the receiving Party pursuant to this Agreement.

85.     Under the terms of the MNDA, CURATORS and MK12 agreed not to use any of HSE's INFORMATION for any commercial purpose or development of any products or technology. CURATORS and MK12 further agreed not to use or attempt to practice any invention arising from or disclosed by HSE's INFORMATION or any part thereof without first entering into an agreement with HSE permitting such use or practice.

86.     Plaintiff HSE's "Contact List", "Operational Manual", and some of its financial information were part of HSE's INFORMATION provided to CURATORS via MK12 under the terms of the MOU, IPA, and MNDA.

87.     By using HSE's INFORMATION that was not generally known to the public to entice investors to invest in or partner with IEA, to contact HSE's "Contact List", and to create and disseminate the "2020 Mizzou Academy Handbook", CURATORS and MK12 breached the terms of the MNDA.

88.     By allowing others access to HSE's INFORMATION including Taratuga, LLC, IEA, IEA's joint venture partners, and any other non-MK12 individuals, CURATORS and MK12 breached the terms of the MNDA.

89.     As a result of CURATORS' and MK12's breach of the IPA and/or MNDA, the Plaintiff has lost the benefit of its bargain and has been damaged in an amount in excess of $75,000.00.

### FIFTH CLAIM FOR RELIEF - BREACH OF CONTRACT ("IPA")
**(Against MK12 and CURATORS)**

90.     Plaintiff, HSE, hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

91.     The IPA was drafted and agreed to, in part, to restrict the parties' right to unilaterally create and use derivative advertising material with Brazilian schools or otherwise.

92.     Section 2.02(d)(vi) of the IPA provides as follows: "except in connection with the collaboration in education as set forth in the MOU, neither PARTY shall have the right to use, reproduce, distribute, or create DERIVATIVE WORKS in the ADVERTISING MATERIAL without the written consent of the other PARTY."

93.     Section 1.02 of the IPA defines "ADVERTISING MATERIAL" as "the promotional, advertising, or similar material (in both written and electronic form) generated during the PROJECT for the sole benefit of the PROJECT, including the website available at http://hseducacional.com.br/site/ and any subdomains therein, including both secure and unsecure portions."

94.     By creating the advertising materials attached hereto as **Exhibits 13 and 14** (in both English and Portuguese) for use, reproduction and distribution for its own benefit, CURATORS and MK12 have breached the terms of the IPA.

95.     As a result of CURATORS' and MK12's breach(es) of the IPA, the Plaintiff has lost the benefit of its bargain and has been damaged in an amount in excess of $75,000.00.

## SIXTH CLAIM FOR RELIEF – BREACH OF CONTRACT ("MOU")
### (Against MK12 and CURATORS)

96.     Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

97.     Section V.3.1(a) of the MOU provides that upon termination of the agreement the "existing students will be permitted to continue with <u>HSE and MK12</u> until their graduation."

98.     MK12 has not permitted and refused to permit the approximately 4,000 Brazilian K-12 students to continue in the same <u>joint program</u> with HSE and MK12 with the same quality and respecting the same academic, operational and financial aspects as required by the terms of the MOU.

99.     As a result of CURATORS' and MK12's breach(es) of the MOU, HSE has incurred damages in excess of $75,000.00.

## SEVENTH CLAIM FOR RELIEF - TORTIOUS INTERFERENCE WITH CONTRACT AND/OR BUSINESS EXPECTANCY
### (Against Defendants MK12, CURATORS, IEA, Boonseng, Choi, Chval, and Vaccari)

100.    Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

101.    Sovereign Immunity does not apply to these Defendants: (a) to the extent that liability insurance covers the claim; (b) because MK12 was involved in a proprietary function by providing online curriculum to middle school and high school students outside the United States; (c) because MK12 operates as a separate independent entrepreneurial fund not connected to University finances; and (d) further does not apply to IEA because at the time of the events alleged herein IEA was a separate Missouri entity with outside investors and not an arm of the State of Missouri or the University of Missouri.

102.    HSE had a direct contractual relationship with approximately fifty-eight (58) customer schools in Brazil. Each one is/was represented by a written signed agreement.

103.    Defendants were aware either directly or by the imputation of the knowledge of their agents of the contract and business relationships that HSE had with its customer schools in Brazil.

104.    These Defendants, acting without justification, individually for profit or personal advantage, maliciously interfered with HSE's relationship with its partnership schools in Brazil by circumventing HSE and with the assistance of Defendant Vaccari by soliciting the Brazilian schools directly before and after CURATORS and MK12 informed the Plaintiff that CURATORS and MK12 were terminating their contract with Plaintiff.

105.    Upon information and belief, IEA, some of MK12's agents, and Vaccari had a financial interest in interfering with HSE's contracts in that the interference was designed to greatly increase the pool of entrepreneurial funds available to these Defendants to funnel money out of MK12 to profit from MK12's Brazilian entrepreneurial activities, all at Plaintiff's expense.

106.    As a result of these Defendants' actions, HSE has incurred damages, including reputational damage in Brazil, in excess of $75,000.00.

107.    The tortious interference by these Defendants was undertaken with legal malice, fraud and/or oppression, thus entitling the Plaintiff to punitive damages in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF - MISAPPROPRIATION OF TRADE SECRETS UNDER THE MISSOURI UNIFORM TRADE SECRETS ACT ("MUTSA") AND UNDER THE FEDERAL DEFEND TRADE SECRETS ACT ("DTSA")**
**(Against MK12, IEA, CURATORS, and against CURATORS for injunctive relief to enjoin any continuing misappropriation)**

108.     Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

109.     The Plaintiff developed an electronically accessible "Contact List" over its many years of prospecting clients and doing business that included the names, positions, contact and other information for important decision makers, including employees in the Brazilian educational system that were necessary to maintain HSE's business relationships in Brazil.

110.     Plaintiff HSE's "Contact List" was gradually developed over many years. Its evolution into electronic form constitutes a "trade secret" as defined by R.S. Mo. §417.453(4) and/or 18 U.S.C. §1836. The "Contact List" derived economic value from not being generally known and was not readily ascertainable by any reasonable proper means. Without it, the information could only be obtained through years of evolving contacts and relationships within the Brazilian school system.

111.     Likewise, Plaintiff's "Operational Manual" was developed over many years for use in international commerce before it engaged in a contractual relationship with MK12 and was in itself (and also contained) "trade secret(s)" as defined by R.S. Mo. §417.453(4) and/or 18 U.S.C. §1836. The Plaintiff's "Operational Manual" was updated every year and it derived economic value from not being generally known, and the "Operational Manual" was not readily ascertainable by proper means.

112.     Plaintiff also stored and made available to MK12 on password protected Google Drive folders and files information and data, i.e. "trade secret(s)" as defined by R.S. Mo. § 417.453(4) and/or 18 U.S.C. §1836, that derived economic value from not being generally known and not readily ascertainable by proper means (collectively, "Google Drive Information").

113.   The Plaintiff protected its above-referenced trade secrets from disclosure with the terms of its MNDA, the terms of the IPA, terms of the MOU and using such controlled passwords to limit access to authorized persons only who had no independent right to utilize the information for the benefit of MK12.

114.   Under the terms of the IPA, Plaintiff HSE provided Defendants CURATORS and MK12 a limited license to use its BACKGROUND IP including HSE's "Contact List", "Operational Manual", "Google Drive Information", and other confidential materials to perform MK12's activities under the MOU in the BRAZILIAN TERRITORY during the term of the MOU, thereby protecting its Brazilian territory.

115.   Defendants CURATORS and MK12 had a contractual duty to Plaintiff to maintain the secrecy of and limit the use of HSE's "Contact List", "Operational Manual", and "Google Drive Information" within the scope of any limited license granted in the MOU, MNDA, IPA or otherwise (collectively, "Limited Licenses").

116.   By obtaining HSE's electronic "Contact List" through improper means, i.e. falsely claiming in an email transmitted to Brazil that they needed to input the "Contact List" into their computer system three (3) days after they had already started to unlawfully remove HSE references from the Plaintiff's annual "Operational Manual" in January, 2019, and by utilizing or allowing IEA to utilize Plaintiff HSE's "Contact List", "Operational Manual", "Google Drive Information" and other confidential or trade secret materials outside of the scope of its "Limited Licenses", Defendants wrongfully misappropriated Plaintiff HSE's trade secret(s).

117.   The Defendants are engaged in ongoing violations of state and federal laws by continuing to use and distribute the "2020 Mizzou Academy Handbook" (derived, copied and plagiarized from HSE's "Operational Manual") and any future versions of the document, and the

Plaintiff is entitled, at a minimum, to injunctive relief to prevent the ongoing violations of state and federal laws, along with monetary damages against all Defendants not otherwise protected by sovereign immunity.

118. Plaintiff is entitled to injunctive relief against parties otherwise eligible for sovereign immunity under the Ex Parte Young exception to sovereign immunity. See *Brantl v. Curators of the University of Missouri,* Case No. 2:18-CV-04130-MDH (W.D. Missouri 2019).

119. Plaintiff HSE is also entitled to recover its monetary damages in the amount of its actual losses against MK12. MK12 is not protected by sovereign immunity because it operates as a separate business or combination of businesses through funding that has arisen from sources other than the State of Missouri, or from enterprises which MK12 would not be allowed to operate under Article IX of the Missouri Constitution because they involve, among other things, middle school and high school education of non-resident, foreign, middle school and high school students in both sectarian and non-sectarian schools. The recovery of funds from MK12 will not require any additional appropriation of funds by the State of Missouri or the removal of financial resources from the State of Missouri because they have been, and currently are, already kept entirely separate from appropriated state funds.

120. Defendant MK12 obtained the updated "Contact List" from HSE deceitfully and other confidential and trade secret materials wrongfully by using them in breach of contract terms without disclosing their intended purpose with evil motive and/or a reckless indifference to HSE's rights.

121. Pursuant to R.S. Mo. § 417.457(2) Plaintiff HSE is also entitled to recover punitive damages against all non-immune Defendants in an amount to be determined by the court, and/or exemplary damages in the amount of two (2) times its damages under 18 U.S.C. §1836.

122.    Alternatively, Plaintiff is entitled to reasonable royalties to be awarded by the court from any revenues derived from the use of HSE's trade secrets.

### NINTH CLAIM FOR RELIEF - COPYRIGHT INFRINGEMENT
**(Against the CURATORS, MK12, Hammons, Regan, Fishman-Weaver, Walter, and against MK12 for injunctive relief to prevent continuing infringement)**

123.    Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

124.    Plaintiff HSE first developed its "Operational Manual" in 2010, and thereafter modified or updated it internally on an annual basis.

125.    Plaintiff HSE's "2015 Operational Manual" and the photographs contained therein consist of original material that is copyrightable subject matter under the Copyright Act, 17 U.S.C. §101 *et. seq.*

126.    Plaintiff HSE is the copyright owner of all versions of the "Operational Manual", including but not limited to HSE's 2015 version, its content, and any and all successor versions thereof.

127.    Plaintiff HSE's "Operational Manual" and/or the text and images contained therein were and are protected by U.S., International, and/or Brazilian copyright laws.

128.    Brazil and the United States are members of the Berne Convention and signatories to the Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS).

129.    Pursuant to the terms of international treaties/agreement it is required that member states including the U.S. and Brazil provide strong protection for each other's intellectual property rights. For example, under TRIPS - Copyright terms must extend at least 50 years, unless based on the life of the author (Art. 12 and 14) and Copyright must be granted automatically, and not based upon any "formality," such as registrations, as specified in the Berne Convention. (Art. 9.)

130.    Defendants MK12, Hammons, Regan, Fishman-Weaver, Walter and other agents of MK12 had access to Plaintiff HSE's "Operational Manual" by virtue of a confidential relationship between HSE and MK12.

131.    Defendants started from an unauthorized copy of HSE's "Operational Manual" and removed all references to "HSE." They then modified, copied, and plagiarized certain sections and changed the title of the document to the "2020 Mizzou Academy Handbook" so that it had some semblance of being a different document. (See January 4, 2019 email attached hereto as **Exhibit 15.)**

132.    The resulting infringing work entitled "2020 Mizzou Academy Handbook" contains, at a minimum, an almost identical organizational structure, plagiarized content, an HSE copyright-protected photograph, and other indicators, including short URLs, that were tell-tale markers inserted by HSE into their own "Operational Manual".

133.    In the process of modifying the HSE Operating Manual, Defendants accessed, downloaded, and distributed the infringing work or portions thereof to fellow members of the group.

134.    They further infringed by sending out the infringing work by email to the Brazilian schools or agents of the Brazilian Schools, which had then existing  contracts with Plaintiff HSE.

135.    Secretly and without Plaintiff's consent, authorization, approval or license, these Defendants knowingly and willfully infringed Plaintiff's exclusive rights in its "Operational Manual".

136.    As a direct and proximate result of Defendants' infringements, Plaintiff has suffered monetary loss and is entitled to the recovery of damages and profits from Defendants jointly and severally in amounts to be determined at trial.

137.    Plaintiff is also entitled to an injunction to prevent Defendants from continuing to copy, plagiarize and distribute the infringing work, and an order to obtain the return of and destroy all infringing works.

### TENTH CLAIM FOR RELIEF – CONTRIBUTORY AND/OR VICARIOUS COPYRIGHT INFRINGEMENT
**(Against the CURATORS, MK12, IEA, Chval, Hammons, Regan, Fishman-Weaver, Walter, and against CURATORS for injunctive relief to prevent continuing infringement)**

138.    Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

139.    Upon information and belief, the CURATORS and MK12 had the ability and/or duty to control the infringing activity of others and derived a financial benefit from allowing the infringement by others to take place because they are now receiving revenue directly from the HSE partner Brazilian schools and are thus, vicariously liable for the actions of its agents.

140.    Defendants Chval, Hammons, Regan, Fishman-Weaver, Walter and other agents of MK12, presumably being cognizant of the University of Missouri plagiarism guidelines and U.S. copyright laws, assisted in the infringement of Plaintiff's copyright protected materials by editing, copying, downloading and inducing others to edit, copy and download portions of the Plaintiff's copyright protected materials when they participated in the January, 2019 scheme to modify HSE's "Operational Manual" and create MK12's competing "2020 Mizzou Academy Handbook". These Defendants having contributed to the copyright infringement of others are liable for contributory copyright infringement.

141.    The Plaintiff has been damaged by the actions of the Defendants and are entitled to injunctive relief to prevent any ongoing infringement and from parties not otherwise immune, compensatory damages, including statutory and/or actual damages, as applicable, pursuant to 17 U.S.C. ¶ 504 of the laws of the United States and/or Brazilian law.

## ELEVENTH CLAIM FOR RELIEF – VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT
**(Against MK12, CURATORS, IEA, Chval, Hammons, Regan, Fishman-Weaver, Walter, and against CURATORS for injunctive relief to prevent continuing infringement)**

142. Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

143. Plaintiff HSE's "Operational Manual" contained a copyright protected photograph along with Copyright Management Information ("CMI") as such term is defined in 17 U.S.C. §1202(c).

144. Defendants Hammons, Regan, Fishman-Weaver, Walter, and other agents of MK12 intentionally removed CMI from HSE's "Operational Manual" when they intentionally removed any references to HSE from the "Operational Manual" to create the infringing work titled the "2020 Mizzou Academy Handbook".

145. These Defendants also intentionally caused the alteration of HSE's "Operational Manual" by changing the title to the "2020 Mizzou Academy Handbook".

146. MK12 subsequently distributed CMI along with the infringing work knowing that it was false and that CMI had been removed and altered without the authority of Plaintiff HSE, the copyright owner.

147. The infringing work was distributed by Defendants to others, including to Brazilian schools and their personnel, then existing HSE clients, knowing, or having reasonable grounds to know, that the Defendants' changes would induce, enable, facilitate or conceal the infringement.

148. Due to the act and conduct of these Defendants as alleged above, all are jointly liable for violations of 17 U.S.C. §1202 of the Digital Millennium Copyright Act either directly or vicariously through their respective agents and employees.

149.    As a direct and proximate result of Defendants' infringements, Plaintiff has suffered monetary loss and is entitled to the recovery of damages and profits from Defendants jointly and severally in amounts to be determined at trial.

150.    The Plaintiff has incurred attorney's fees in pursuing this claim and are entitled to recover their attorney's fees and costs.

**TWELFTH CLAIM FOR RELIEF**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(C), PATTERN OF RACKETEERING**
**ACTIVITY**
**(Against Choi, IEA, MK12, CURATORS, Chval, Vaccari, Boonseng and DOES 6-20**
**"RICO Defendants")**

151.    The Plaintiff hereby incorporates by reference all of the previous paragraphs of this Complaint as if set forth in full herein.

152.    At all relevant times, the Defendants (collectively, "RICO Defendants") were affiliated members of a homogenous and commonly controlled organization (i.e., the "Enterprise") that was and is involved in the creation, promotion, distribution, marketing, teaching and grading of online middle school and high school educational courses in interstate and foreign commerce.

153.    The commonly controlled organization or Enterprise consists of a joint venture or partnership between IEA, IEA Investors, CURATORS, MK12, Choi, Chval, Vaccari, Boonseng, and DOES 6-20, with IEA providing teachers and other services at inflated prices, IEA Investors providing capital, MK12 providing online access to middle school and high school courses for Brazilian students, and the CURATORS on behalf of MK12 providing the contract relationships with the Brazilian Schools and the institutional endorsement of their operations.

154.    As part of the Enterprise scheme, and pursuant to agreement between IEA, IEA Investors, and MK12; IEA entered into agreements to favored partners/investors in the Enterprise, which included a five percent (5%) share of the revenue from the Enterprise's activities in Brazil.

155.    As part of the Enterprise scheme, IEA paid or agreed to pay its investors/partners an undisclosed share of the revenues, which it turned around and fraudulently invoiced to Plaintiff as if they were legitimate costs of providing online curriculum to Brazilian students in middle school and high school.

156.    As part of the enterprise scheme, IEA paid artificially inflated invoices from Taratuga, LLC, which then charged or attempted to charge Plaintiff as legitimate costs of providing online curriculum to Brazilian students.

157.    The RICO Defendants consist of the Enterprise's leadership, its participants, its investors, and associates, all of which constitute an "enterprise" as that term is defined in 18 U.S.C. § 1961(4) and is a group of individuals and companies associated-in-fact.

158.    The Enterprise is or was engaged in, and its activities affect, interstate and foreign commerce, specifically involving U.S. and Brazilian commerce.

159.    The Enterprise was and did function as an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise, which included generating profits for investors/partners of IEA and extra revenue to one or more CURATORS and/or MK12 agents and to Vaccari.

160.    The objective of the Enterprise was the enrichment of IEA investors/partners, and others who are persons favored and approved by MK12 to receive a disguised income stream from tuition and fees paid by approximately four thousand (4,000) Brazilian students.

161.    The predicate criminal acts for the Enterprise are violations of the U.S. Copyright Act, 17 U.S.C. §506(a); the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836; and 18 U.S. C. §1961 for mail and wire fraud. These include the knowing and willful infringement of Plaintiff's copyright rights in violation of federal law, the appropriation of trade secrets in violation of federal law, and mail and wire fraud for artificially inflated invoicing that involved foreign

commerce which was designed to siphon money to the IEA investors/partners, to some of CURATORS' and/or MK12's agents, and to Vaccari, at Plaintiff's expense.

162. The RICO Defendants acted with scienter, which is evidenced by their approval of a detailed PowerPoint Presentation that included references to unlawful copying and other related matters before the "Flip" took place in February 2019. (See **Exhibit 16**).

163. Further, Defendants Choi and Chval addressed a Brazilian audience via pre-recorded video in February 2019, without HSE's knowledge or consent. In said presentation, Choi stated that he had made some "very difficult, but necessary decisions", which created the opportunity for MK12 to deal directly with Brazilian Schools, removing HSE from the process and clearly harassing HSE's clients present at the meeting. (See **Exhibit 17**, screenshot) Chval refers to the pre-existing, joint HSE-MK12 program as "Mizzou K-12's innovative co-teach program", blatantly not giving any credit to HSE, which was the institution who actually brought to Mizzou K-12 the co-teach model, which HSE had developed and had in place since 2009 with its schools and previously with Texas Tech University. Chval removes HSE from the process and clearly harasses HSE's clients present at the meeting by saying on the video: "What will change as we provide our educational services directly to partner schools: we will have closer alignment with academic values and philosophies (...)", therefore implying that HSE did not have close enough alignment with academic values and philosophies, thus reducing HSE's value in front of an audience of HSE clients. (See **Exhibit 18**, screenshot).

164. As a direct and proximate cause of the RICO Defendants' violations of RICO, the RICO Defendants are jointly and severally liable to Plaintiff for the damages available for copyright infringement, federal trade secret misappropriation, threefold or treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**THIRTEENTH CLAIM FOR RELIEF– BREACH OF FIDUCIARY DUTY**

**(Against  CURATORS, and MK12)**

165.    Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

166.    Plaintiff, CURATORS and MK12 entered into a fiduciary and confidential relationship by virtue of the terms of the MNDA, the MOU, and the IPA. The IPA specifically acknowledged that they were creating joint property interests with respect to intellectual property which along with the MNDA created a special fiduciary and confidential relationship.

167.    Defendants CURATORS and MK12 had a fiduciary duty to Plaintiff.

168.    Defendant CURATORS breached its fiduciary duty to Plaintiff by, among other things, as alleged in this Complaint, allowing MK12 and IEA to act without supervision and without proper internal controls in place to carry out its obligations under the terms of MNDA, MOU, and IPA.

169.    Defendants CURATORS and MK12 breached their respective fiduciary duties to Plaintiff by taking its trade secrets and copyrights and using them in violation of express contract terms to the contrary.

170.    As a result of CURATORS's and MK12's breaches the Plaintiff has sustained damages proximately caused by MK12 in an amount to be proven at trial in excess of $75,000 .

**FOURTEENTH CLAIM FOR RELIEF – MONEY HAD AND RECEIVED**
**(Against CURATORS and MK12)**

171.    Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

172.    On or about June 06, 2019, after Defendants CURATORS and MK12 had breached their agreement(s) with Plaintiff, the Plaintiff made a payment to Defendant MK12 in the amount of $1.4 million USD in good faith under the mistaken hope that the MOU provision

that required MK12 to allow the students in the joint HSE-MK12 program would be honored permitting said students to continue in the joint program until their high school graduation.

173.     MK12 did not allow the students to continue in the joint program as promised in the MOU.

174.     Had Plaintiff known the CURATORS' and MK12's true intentions, Plaintiff would not have made the payment and as a result is entitled to restitution for money had and received. As a proximate result, Plaintiff were damaged as hereinabove alleged.

## FIFTEENTH CLAIM FOR RELIEF – DEPRIVATION OF PROCEDURAL DUE PROCESS 42 U.S.C. § 1983
### (Against the CURATORS, MK12,Chval and Choi)

175.     Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if set forth in full herein.

176.     Pursuant to its contracts with CURATORS and MK12, Plaintiff has a clearly established right under the Fourteenth Amendment to substantive and procedural due process before MK12 can take action that alters, diminishes, or extinguishes Plaintiff's liberty and/or property interests arising from its contract relationship(s) with CURATORS and/or MK12 .

177.     Defendants Choi, Chval and others acting under color of state law, deprived Plaintiff of its procedural due process rights when they approved the issuance of retroactive invoices to the Plaintiff on or about May 12, 2018 for over $4 million USD and again on January 1st, 2019 for over $5 million USD that was not within the written contract terms and was more in the nature of a punitive fine directed at Plaintiff. (See Invoices attached as **Exhibits 19 and 20**.)

178.     The invoices were to Plaintiff, however, the charges amounted to a retroactive tuition increase for approximately four thousand (4,000) students who had already taken and paid for online middle school and high school curriculum starting in 2015.

179.    The retroactive nature of the invoices, which was not based on any express contract provision, was arbitrary, capricious and not based on any standard or policy of a public University.

180.    The retroactive invoices made it impossible to pass the retroactive tuition increase on to the Brazilian school students and instead, if paid, would cause Plaintiff to suffer an enormous loss to cover the retroactive tuition increase.

181.    MK12 has no procedural mechanisms in place that would provide Plaintiff with a method to contest the issuance of such invoices and as consequence the Plaintiff has been deprived of its constitutional procedural due process rights.

182.    MK12 had a direct conflict of interest in issuing the invoices and fines because it did so at the same time MK12 was busy preparing to compete with Plaintiff and take over and interfere with its contractual relationships in Brazil.

183.    As a proximate result, Plaintiff was damaged as hereinabove alleged. Plaintiff seek compensatory damages and punitive damages, as well as attorneys' fees, under this claim for relief.

**SIXTEENTH CLAIM FOR RELIEF – DEPRIVATION OF SUBSTANTIVE DUE PROCESS 42 U.S.C. § 1983**
**(Against CURATORS, MK12, Chval and Choi)**

184.    Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if set forth in full herein.

185.    Pursuant to its contracts with MK12, Plaintiff has a clearly established right under the Fourteenth Amendment to substantive and procedural due process before MK12 can take action that alters, diminishes, or extinguishes Plaintiff's liberty and/or property interests arising from its contract relationship(s) with MK12.

186.    Defendants Choi, Chval and others acting under color of state law, deprived Plaintiff of its substantive due process rights when they approved the issuance of retroactive

invoices to the Plaintiff on or about May 12, 2018 for over $4 million USD and again on or about January 1, 2019 for over $5 million USD that was not within the written contract terms between the Plaintiff and MK12, and was more in the nature of a punitive fine directed at Plaintiff.

187.    The invoices were to Plaintiff, however, the charges amounted to a retroactive tuition increase for approximately four thousand (4,000) Brazilian students who had already taken, and paid for, online middle school and high school curriculum starting in 2015.

188.    The retroactive tuition increase to the Plaintiff and the Brazilian students shocks the conscience in that it increases the cost to Plaintiff arbitrarily and retroactively and is not designed to merely recover the actual additional cost of participating in the program which according to statute must be approved by the Chancellor or their delegate under R.S. Mo. § 236.060(C) in advance of any increase.

189.    It further shocks the conscience because the resulting cost to Plaintiff to pay for Brazilian students is higher than the tuition that MK12 itself charges to Brazilian students now that MK12 has begun contracting with the Brazilian schools directly. One of the pitches that MK12 made to the Brazilian schools was that they could keep the tuition lower without the involvement of HSE.

190.    As a proximate result of the violation of Plaintiff's substantive due process rights, Plaintiff was damaged as hereinabove alleged. Plaintiff seek compensatory damages and punitive damages, as well as attorneys' fees, under this claim for relief.

**SEVENTEENTH CLAIM FOR RELIEF – VIOLATION OF EQUAL PROTECTION CLAUSE 42 U.S.C. § 1981**
**(Against CURATORS, MK12, Chval and Choi)**

191.    Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if set forth in full herein.

192.     Defendants Moi and Chval, and others acting under color of state law, deprived Plaintiff of rights secured by the Constitution and laws of the United States, including those secured by 42 U.S.C. § 1981 that entitles the Plaintiff to equal protection of the laws.

193.     The Defendants violated the Plaintiff's rights to equal protection of the laws by arbitrary and capricious conduct of charging retroactive tuition to Plaintiff and Brazilian students without doing the same for MK12's other middle school, high school, and university students around the world.

194.     As a proximate result of Defendant's constitutional violations, Plaintiff were damaged as hereinabove alleged. Plaintiff seek compensatory damages and punitive damages, as well as attorneys' fees, under this claim for relief.

## EIGHTEENTH CLAIM FOR RELIEF - DECLARATORY JUDGMENT ("MOU")
### (Against the CURATORS and MK12)

195.     Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

196.     Upon information and belief, the CURATORS and MK12 do  not have authority under the Missouri Constitution or otherwise to commit University resources, including but not limited to, the enormous amount of time and expense necessary for administrators, professors, deans, teachers, and graders, to create and administer middle school and high school student education programs to non-residents, non-citizens, in foreign countries, nor does it have the authority to incur the costs of these programs, defer the determination of tuition charges, and assess retroactive tuition charges to foreign middle school and high school students or their representatives.

197.      Upon information and belief, the retroactive invoices issued to HSE were not accounted for by the CURATORS  in accordance with the University of Missouri's standard

international policies, contract and accounting procedures. Further they included unauthorized, fictitious and inflated expenditures of Taratuga and IEA (private entities), and included a 5% markup to be paid to IEA's investors and/or joint venture partners.

198. The Parties are interested parties within the meaning of 28 USC §2201 with a justiciable dispute with respect to any amount that was legitimately charged to HSE or that HSE may now owe.

199. The Plaintiff hereby requests that MK12's retroactive invoices be held invalid and void as being an unlawful exercise of the Curators and MK12's power and authority.

## NINETEENTH CLAIM FOR RELIEF – UNCONSTITUTIONAL TAKING OF PROPERTY WITHOUT PAYMENT OF JUST COMPENSATION
### (Against MK12, CURATORS, Choi and Chval)

200. Plaintiff HSE hereby incorporates by reference all of the previous allegations of the Complaint as if restated in full herein.

201. Plaintiff is the owner of certain trade secrets referenced herein including a "Contact List" that it developed over years of conducting business in Brazil, and its "Operational Manual" which it refined over many years of conducting business in Brazil.

202. These trade secrets contributed to a significant valuation of Plaintiff in excess of $35,000,000 USD.

203. By taking from Plaintiff and exposing the Plaintiff's trade secrets, and other intellectual property interests, to others without any requirement for anyone to keep the materials secret, Plaintiff has destroyed the value of Plaintiff's business.

204. Plaintiff's interest in its trade secrets and other intellectual property are or were private property interests as that term is used in U.S. Const. Amend. V as made applicable to the states by virtue of the Fourteenth Amendment, and Article I, sections 26 and 28 of the Missouri Constitution.

205.    One or of the identified Defendants  took, damaged, and/or destroyed Plaintiff's private property through their blatant and intentional infringement of Plaintiff's copyright (i.e., its unauthorized use and wide-spread distribution of a derivative of HSE's "Operational Manual") and through blatant and intentional disclosure of Plaintiff's trade secrets including its "Contact List" and "Operational Manual", both of which had previously been, and remain, protected by the terms of the MNDA and IPA.

206.    Defendant MK12 has deprived Plaintiff of its private property without due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

207.    Defendant MK12's actions, as described above, constitute a taking, damaging, or destruction of Plaintiff's private property without just compensation in violation of Plaintiff's constitutional rights.

208.    State procedures are either inadequate or unavailable for Plaintiff to seek just compensation for the taking.

209.    Plaintiff has suffered damages as a result of Defendants' actions and seeks recovery of its damages, along with attorney's fees and costs.

## PRAYER

WHEREFORE, Plaintiff HSE prays for judgment against Defendants as follows:

a)      For compensatory damages in excess of $75,000.00;

b)      For damages and other relief consistent with 17 U.S.C. §504 et. seq. including but not limited to Plaintiff's actual damages, profits of the infringer, and/or statutory damages;

c)      For injunctive relief to remedy the misappropriation of trade secret(s);

d)      For injunctive relief to prevent MK12 from utilizing any of Plaintiff's copyright protected or derivative works and for the destruction of any infringing materials whether located in the U.S. or Brazil;

e)      For monetary damages under U.S., International, and/or Brazilian law against the Defendants that are not otherwise protected by sovereign immunity from damages;

f)      For punitive and/or twofold or threefold damages as appropriate in an amount to be determined at trial;

g)      For declaratory relief as requested herein;

h)      For costs of suit and prejudgment interest;

i)      For reasonable attorney's fees;

j.)      For any additional relief that the court deems just and proper in the premises.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands trial by jury on all issues arising herein.

Caldwell Law Firm, P.C.

By: */s/ Kenneth N, Caldwell*
Kenneth N. Caldwell, MO No. 65443,
NV No. 3692
Edward N. Foster, MO No. 40320
1201 NW Briarcliff Parkway 2nd Floor
Kansas City, MO 64116 (816) 535-1001
kcaldwell@caldwell-law-firm.com

ATTORNEYS FOR PLAINTIFF