IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HIGH SCHOOL SERVICOS EDUCACIONAIS, LTDA., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 4:21-CV-00029-DGK |
| MUN Y. CHOI, et al., | ) ) ) |
| Defendants. | ) ) |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

This case involves a soured business relationship involving educational services provided to Brazilian schoolchildren. Plaintiff High School Servicos Educacionas, LTDA is a Brazilian corporation that contracted with the Curators of University of Missouri ("Curators") to provide Brazilian K-12 schoolchildren with a curriculum and diploma that aligned with United States educational standards. This relationship allegedly allowed the University of Missouri to create a pipeline for Brazilian students to matriculate to its university. Plaintiff alleges that during this relationship, the employees of Mizzou K-12 ("MK12")—a private school that worked with Plaintiff—allegedly infringed Plaintiff's copyrighted educational materials and unlawfully acquired Plaintiff's client list, so it could do business directly with the Brazilian schools. Plaintiff also alleges that individuals who controlled MK12 as well as a separate company, International Education Associates, LLC ("IEA"), and IEA's investors schemed to defraud Plaintiff through inflated invoices, infringed copyrights, and stolen trade secrets.

To recover for this alleged wrongdoing, Plaintiff has filed a six-count lawsuit against IEA and various individuals employed by—or associated with—MK12 and IEA, including Defendants Mun Y. Choi, Kathryn Chval, Angela Hammons, Tamara Regan, Kathryn Fishman-Weaver,

Stephanie Walters, Thitinun Boonseng, and John Does 1-100.  The amended complaint (ECF No. 37) alleges various claims for different types of copyright right infringement (Counts I–III), Racketeer Influenced and Corrupt Organizations Act ("RICO") violations (Count IV), and deprivations of due process rights (Counts V & VI).

Now before the Court are Chval's Motion to Dismiss (ECF No. 43) and Defendants Choi, IEA, Hammons, Regan, Fishman-Weaver, Walters, and Boonseng's ("Choi Defendants") Motion to Dismiss (ECF No. 45).  For the reasons stated below, the motions are GRANTED IN PART AND DENIED IN PART.  Counts II and IV are dismissed without prejudice, but Plaintiff may file an amended complaint within fourteen days of this order.

## Background

Plaintiff High School Servicos Educacionais, Ltda. ("HSE") is a Brazilian corporation that contracts with various universities in the United States to provide Brazilian K-12 schools and students with a curriculum aligned with the United States educational system.  This work allowed Brazilian students to receive an accredited United States high school diploma and a pathway to United States universities.  To facilitate this, Plaintiff developed a proprietary operational manual ("Operational Manual") that it used with its partner universities to help teach Brazilian students.  Plaintiff guarded the Operational Manual, only distributing it to people and institutions with whom Plaintiff had confidentiality and intellectual property agreements.  Plaintiff alleges that the Operational Manual is entitled to copyright protection, with one of the photographs in it having been registered with the U.S. Copyright Office.

The amended complaint names a variety of other entities but provides no meaningful explanation of what precisely they do and what their relationships are to each other.  But the entities

are cited throughout the remaining allegations, so the Court attempts to discern and then distill these allegations as best it can.

MK12 is an accredited private school. Defendant Choi has been President of University of Missouri since March 2017, and he "control(s)" MK12. Defendants Hammons, Regan, Fishman-Weaver, and Walter are employees of MK12. IEA is a Missouri LLC that "caters to, and operates for the benefit of, non-university level students including those who are not residents of the State of Missouri or the USA." ECF No. 37, Compl. ¶ 3. IEA purportedly has "no official authorization from the State of Missouri," and it does not receive funding from the Curators. *Id.* Defendant Chval was a director of IEA, while Defendant Boonseng was some type of investor in IEA. IEA entered into agreements with certain favored partners and investors,[1] including a commitment of a five percent (5%) share of the revenue from its activities in Brazil. The amended complaint does not explain the relationship between the Curators, MK12, and IEA.

In early-to-mid 2015, Plaintiff entered into various agreements with the Curators. These agreements ensured non-disclosure of certain information and outlined the intellectual property sharing and protections for the parties. None of the agreements defined the amount of money that either party would pay the other, but the parties reached an informal agreement for reasonable payments from Plaintiff to the Curators. The amended complaint never specifies what these payments were for, but Plaintiff allegedly paid the Curators "millions of dollars" for 2015-2019 without being invoiced. ECF No. 37, Compl. ¶ 21.

On May 12, 2018, the Curators allegedly invoiced Plaintiff $4,085,048, including retroactive billing from 2015-2017 for services that Plaintiff had already paid for. The amended complaint never specifies what the supposed services were. On January 1, 2019, the Curators

---

[1] The precise identities of these investors and partners are not specified in the amended complaint.

3

provided a replacement invoice that raised the amount to $5,162,638.  These retroactive bills for "services" were not based on any written agreement, and Plaintiff claims that "upon information and belief, [they] included inflated charges."  ECF No. 37, Compl. ¶ 24.  Plaintiff responded to the Curator's invoices by saying the amounts had already been paid to MK12.

Although many sections of the amended complaint allege the Curators invoiced Plaintiff, other sections attribute invoicing issues to other parties.  Later in the amended complaint, Plaintiff alleges that IEA "paid or agreed to pay its investors/partners an undisclosed share of the revenues, which it turned around, and using the mail and wire system, fraudulently invoiced to Plaintiff as if they were legitimate costs of the Curators providing online curriculum to Brazilian students in middle school and high school."  ECF No. 37, Compl. ¶ 82.  Plaintiff further alleges that "IEA paid artificially inflated invoices from Taratuga, LLC, which then charged or attempted to charge Plaintiff as legitimate costs of providing online curriculum to Brazilian students."  ECF No. 37, Compl. ¶ 83.  The amended complaint never explains when these invoices were issued, what Taratuga LLC is, and what its relationship was to IEA, MK12, or the Curators.  Still later in the amended complaint, Plaintiff alleges that unnamed John Does were responsible for the "fraudulent" invoicing in 2018 and 2019 described in the preceding paragraph.  ECF No. 37, Compl. ¶¶ 94, 103.

On January 4, 2019, only a few days after the updated invoice was sent, MK12 employee Tanya Haeussler sent a "Highly Confidential" email to Defendants Hammons, Regan, Fishman-Weaver, and Walter.  The email gave them a link to the "INTERNAL 2019 MK12 Operation Manual Google Doc" and told them to "go through the entire document and make sure any changes that are needed are included, including removing all HSE references."  ECF No. 37, Compl. ¶ 32.  The email further asked these Defendants to engage other individuals in confidence as necessary

4

Case 4:21-cv-00029-DGK   Document 76   Filed 02/22/22   Page 4 of 17

to edit the document but warned to "be circumspect in who you ask to help update the document. They need to CLEARLY understand what we are intending to do, and understand this is highly confidential." *Id.* ¶ 33. On March 12, 2019, Hauessler stated that the changes were complete and that "in light of the IP concern with HSE, the 'Operational Manual' has been completely revised and we now have a DRAFT 2020 Mizzou Academy Handbook." *Id.* ¶ 34. Defendants Hammons, Regan, Fishman-Weaver, and Walter had removed all HSE references from the Operational Manual to make it look like the 2020 Mizzou Academy was a different document. But the 2020 Mizzou Academy Handbook had the same structure, content, and HSE copyrighted photograph as the Operational Manual. Defendants Chval, Choi, Hammons, Regan, Fishman-Weaver, and Walter allegedly approved an undated PowerPoint that states "immediately stop all work with HSE," "remove HSE from all online docs," "do not work in HSE space," "files have been copied," and "delete your links to HSE space." ECF No 37-16.

On January 7, 2019, three days after "the Curators"[2] started making an unauthorized derivative copy of the Operational Manual, Haeussler emailed one of Plaintiff's employees asking for its "Contact List" so MK12 could carry out its 2019 obligations with Plaintiff. The "Contact List" was developed over many years, and it included the contact names, email addresses, and phone numbers of the important decisionmakers at Plaintiff's Brazilian partner schools. Plaintiff protected this "Contact List" and only shared it with parties on a "need-to-know" basis and under the terms of a non-disclosure agreement. The Curators, with the assistance of Defendants Chval and Choi, used the "Contact List" to solicit and pressure Plaintiff's partner schools to abandon Plaintiff and work directly with the Curators. Plaintiff claims it would not have provided the "Contact List" had it known the Curators' true intent.

---

[2] Paragraph 41 references the Curators as the actor performing the copying, but this appears to contradict earlier paragraphs that claim it was MK12 employees.

5

On February 14, 2019, the Curators sent an email to all of Plaintiff's Brazilian partner schools with the subject line "Mizzou for You in 2020." ECF No. 37, Compl. ¶ 44. The Curators characterized this as "The Flip." Plaintiff was not included on the email, and it was sent without Plaintiff's knowledge or consent. That same day, after sending the email, the Curators sent a letter to Plaintiff saying that their contract would be terminated by February 14, 2020. At other points in February 2019, the Curators sent emails to Plaintiff's partner schools to encourage them to attend meetings about the Curator's offerings. For those meetings, Defendants Choi and Chval made prerecorded statements. Defendant Choi remarked that he had made some "very difficult, but necessary decisions," which created the opportunity for the Curators to deal directly with Brazilian schools. ECF No. 37, Compl. 90. Defendant Chval referred to HSE-MK12 joint program as "Mizzou K-12's innovative co-teach program," without giving credit to HSE. Chval also purportedly stated "What will change as we provide our educational services directly to partner schools: we will have closer alignment with academic values and philosophies." *Id.* The statements from Chval and Choi were purportedly aimed at "harassing" HSE clients and demeaning HSE in front of them. *Id.*

**Procedural History**

This case was filed in this district on January 19, 2021. The amended complaint has six counts: (1) copyright infringement, 17 U.S.C. § 101, against Defendants Hammons, Regan, Fishman-Weaver, Walter, and John Does; (2) contributory and vicarious copyright infringement against Defendants Chval, Choi, Hammons, Regan, Fishman-Weaver, Walter, and John Does; (3) a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202, by Defendants Hammons, Regan, Fishman-Weaver, Walter, and John Does; (4) a RICO violation, 18 U.S.C. § 1962(c), against Defendants Choi, Chval, Boonseng, IEA, and unnamed John Does 6-20; (5) a procedural

due process claim against John Does; and (6) a substantive due process claim against John Does. ECF No. 37, Compl. All named Defendants have moved to dismiss all claims against them (ECF No. 43, 44), and those motions are fully briefed. This case was initially filed with another judge within this district, but it was transferred to the undersigned on January 4, 2022.

Prior to this lawsuit, Plaintiff filed an eight-count lawsuit against the Curators and MK12 employees Haeussler and John Marsh. *See High School Servicos Educacionais, LTDA v. The Curators of the University of Missouri*, No. 19-cv-04083-BCW (W.D. Mo. 2019). The allegations there regarded much of the same conduct at issue here, but it did not involve any of the Defendants or causes of action included here. The claims against the Curators were dismissed for lack of subject matter jurisdiction, ECF No. 151, and Haeussler and Marsh were dismissed with prejudice via a stipulation, ECF No. 159.

Plaintiff has also filed a state-court action against MK12 and the Curators in the Circuit Court of Jackson County, Missouri. *See High School Servicos Educacionais, LTDA v. Mizzou Academy and The Curators of the University of Missouri*, No. 2116-CV0994 (Cir. Ct. April 24, 2021). The parties have not provided the complaint from that action, but it appears from the docket entries that it may overlap with the allegations raised here. That case is still pending.

**Standard of Review**

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff [ ]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The Court generally ignores materials outside the pleadings, but it may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012). But the Court cannot consider the public records for the truth of the matters asserted in them. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 830–32 (8th Cir. 2003).

**Discussion**

The two sets of Defendants have filed separate motions, but their arguments largely overlap. The Choi Defendants offer various bases for dismissal. First, they argue that the copyright claims (Counts I-III) must be dismissed because several of the Choi Defendants are entitled to qualified immunity. Second, they argue that claim preclusion requires dismissal of all claims because they should have been brought in the earlier litigation against the Curators and two MK12 employees. Third, they argue that contributory and vicarious copyright claims (Count II) as well as the RICO claim (Count IV) fail to state a claim. Defendant Chval also moves to dismiss the only two claims asserted against her (Counts II & IV) because they fail to state a claim. At the hearing on these motions, Defendant Chval also joined the Choi Defendants' motion to dismiss on qualified immunity grounds.

The Court holds that Defendants have failed to demonstrate that they are entitled to qualified immunity or claim preclusion at this stage. But they have shown that the amended

8

complaint fails to state claims for vicarious and contributory infringement (Count II) and a RICO violation (Count IV). Counts II and IV are dismissed without prejudice, and Plaintiff is given fourteen days in which it may file an amended complaint.

### I. The Court cannot find, at this stage, that Defendants are University of Missouri employees potentially entitled to qualified immunity.

Defendants argue that they are entitled to qualified immunity for all the copyright claims (Counts I–III). Plaintiff counters that the amended complaint has pled that MK12 is a "private school" and IEA is a private company and all the Defendants are being sued in connection for their work with those companies. In their reply brief, Defendants attached an affidavit from Defendant Fishman-Weaver that was filed in the overlapping state-court action to prove that MK12 is a public entity that entitles its employees to qualified of immunity.

Qualified immunity is meant to protect government officials from liability for certain actions taken as part of their official duties. *See Dollar Loan Ctr. of S.D., LLC v. Afdahl*, 933 F.3d 1019, 1026 (8th Cir. 2019); *Edwards v. Baer*, 863 F.2d 606, 607 (8th Cir. 1988). Qualified immunity questions should be resolved at the earliest stage possible, *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009), but application of qualified immunity at the motion to dismiss stage requires the defense to be "established on the face of the complaint," *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). The Court must accept Plaintiff's allegations related to qualified immunity as true and view them in the light most favorable to Plaintiff. *See Baude v. Leyshock*, 23 F.4th 1065, 1069 (8th Cir. 2022) (affirming denial of qualified immunity at motion to dismiss stage). The Court cannot contradict the allegations in the complaint by taking as true matters asserted in public records. *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (affirming denial of qualified immunity motion to dismiss where defendant argued that police reports embraced by the pleadings showed he was entitled to qualified immunity).

9

In arguing for qualified immunity here, Defendants ignore these well-established principles about the application of this defense at this stage. Defendants implore the Court to ignore Plaintiff's allegations that MK12 was an accredited private school and the reasonable inference that the Defendants conduct was related solely to this private school and outside the scope of any official duties they may have had with the University of Missouri. They further invite the Court to adopt the truth of the matters asserted in Defendant Fishman-Weaver's affidavit—a public record from another court—to contradict Plaintiff's allegations and the reasonable inferences therefrom. But the Court cannot do so, as the Eighth Circuit has recently made clear. *See LeMay*, 18 F.4th at 289. Considering the allegations in the amended complaint as true and the reasonable inferences arising therefrom, Defendants have not established that they are government or public officials entitled to qualified immunity based on the face of the amended complaint.

Thus, the Choi Defendants motion to dismiss is denied insofar as they seek dismissal of Counts I through III based on qualified immunity. This ruling does not preclude them from reasserting this defense later. It simply is premature on this record.

## II. The Choi Defendants have not carried their burden of showing that claim preclusion bars Plaintiff's claims.

The Choi Defendants argue that Plaintiff's claims are barred by claim preclusion as they did not bring them in their first action against the Curators and two other MK12 employees. Plaintiff argues that the Choi Defendants have not shown that the prior case: (1) resulted in a final judgment on the merits since the Curators were dismissed on subject matter grounds; (2) involved parties that were in privity with Defendants since Defendants have been sued in their individual capacities; or (3) involved the same causes of action raised here since new claims have accrued since then. The Choi Defendants never responded to Plaintiff's specific arguments in their reply; they simply reincorporated their opening arguments.

10

Case 4:21-cv-00029-DGK   Document 76   Filed 02/22/22   Page 10 of 17

"Under federal common law, the doctrine of *res judicata*, or claim preclusion, applies when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018).[3] "Claim preclusion, like issue preclusion, is an affirmative defense," so the Choi Defendants bear the burden of proof. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008).

The Choi Defendants have not carried their burden of establishing claim preclusion. First, Plaintiff aptly notes that a dismissal for lack of subject matter jurisdiction is not a decision on the merits. *See Sandy Lake Band of Miss. Chippeawa v. United States*, 714 F.3d 1098, 1103 (8th Cir. 2013). The *Curators* were dismissed for lack of subject matter jurisdiction, but the other defendants remained and were ultimately dismissed via a stipulation. It may very well be that this procedural posture constitutes a final judgment on the merits, but the Choi Defendants have not responded to Plaintiff's argument on this front or cited any cases showing that there was definitively a final judgment. Second, Plaintiff cites some caselaw suggesting that where individuals are sued in their individual capacity, they are not considered "in privity" with others or government agencies. *See Irving v. Dormire*, 586 F.3d 645, 647 (8th Cir. 2009). But, like the proceeding argument, the Choi Defendants never responded to this argument. Third, Plaintiff cites caselaw suggesting that where, as here, claims allegedly accrued after the filing of the second lawsuit, claim preclusion does not apply. *See United States v. Bala*, 948 F.3d 948, 951 (8th Cir. 2020). The Choi Defendants, however, never discussed this caselaw or whether the claims here indeed accrued after the filing of the last lawsuit.

---

[3] The parties both apply federal common law to this issue, but they do not explain exactly why they are doing so. The Court, thus, assumes without deciding that federal common law applies for purposes of this motion.

11

Case 4:21-cv-00029-DGK   Document 76   Filed 02/22/22   Page 11 of 17

The Court cannot make a definitive ruling on claim preclusion at this stage. The Choi Defendants have failed to respond to several colorable (though not necessarily meritorious) arguments raised by Plaintiff that suggest claim preclusion may not apply. And the Court will not raise and resolve arguments for the Choi Defendants. The Court finds, at this stage, that the Choi Defendants have not carried their burden of proving claim preclusion. So the Court denies their motion without prejudice insofar as it seeks dismissal of Plaintiff's claims on these grounds.

### III. Plaintiff has failed to state a plausible claim for contributory or vicarious infringement.

Defendants Chval, Choi, Hammons, Regan, Fishman-Weaver, and Walter argue that Count II fails to state a claim for contributory and vicarious infringement. Plaintiff counters that the allegations and inferences therefrom are enough to support these claims.

To state a claim for contributory infringement, a plaintiff must allege facts showing that the defendant "(1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); *see also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1146 (10th Cir. 2016). This typically requires the plaintiff to plead sufficient facts to show active steps to encourage infringement. *See InfoDeli, LLC v. Western Robidoux, Inc.*, No. 15-cv-00364-BCW, 2017 WL 11517599, at *2 (W.D. Mo. Aug. 14, 2017) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)); *see also Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018). As for vicarious infringement, the plaintiff must plead that the defendant has "(1) the right and ability to supervise the infringing conduct; and (2) a direct financial interest in the infringing conduct." *Perfect 10, Inc.*, 494 F.3d at 795.

Plaintiff has fallen well short of these standards for all Defendants. As for the contributory infringement claims against Defendants Choi and Chval, Plaintiff has not pled sufficient facts to

12

show that they had the requisite knowledge of the infringing activity or that they induced, caused, or materially contributed to the infringing activity. True, the amended complaint has a conclusory allegation that they "approved" a PowerPoint presentation that has references to copying HSE files. But they have not plausibly pled when they approved this PowerPoint, to what extent they approved of it, and that the files referenced in the PowerPoint relate to Plaintiff's copyright-protected materials.[4] Without more, the conclusory allegation about their approval of the PowerPoint is not enough for the Court to infer Defendants Choi and Chval had knowledge of the infringing activity or took active steps to cause, induce, or materially contribute to it. As for Defendants Hammons, Regan, Fishman-Weaver, and Walter, Plaintiff makes no plausible, nonconclusory allegation that they in any way meet either element of this claim. Indeed, the amended complaint merely parrots the elements of the claim for these Defendants. This does not suffice.

As for vicarious infringement, Plaintiff makes no plausible allegation that Defendant Chval or Choi had the right and ability to supervise the infringing conduct. Simply because these Defendants approved an undated PowerPoint in some form, does not mean they necessarily had the right and ability to supervise Defendants Hammons, Regan, Fishman-Weaver, and Walter, who allegedly conducted the infringement. A stronger nexus between those who allegedly committed the underlying copyright infringement and Defendants Chval and Choi needs to be made to sufficiently plead the "right and ability" prong. Likewise, they fail to plead that Defendant Chval

---

[4] Plaintiff asks the Court to infer from the references in the PowerPoint that the MK12 team should "not work in the HSE space" and that "files have been copied," that Defendants Choi and Chval had the requisite knowledge of the infringing activity or that they induced, caused, or materially contributed to it. This is far too large of an inferential leap. There is no explanation of what these files are, when they were copied, by whom they were copied, or whether they were copyright protected. Simply because files were "copied" from a shared workspace, does not mean that they were Plaintiff's copyright-protected materials or that Defendants were encouraging, causing, or contributing to infringement by approving this statement of fact at some unspecified time. Plaintiff needs to plead more facts to state a plausible claim.

or Choi have a direct financial interest in the infringing activity. The fact that Chval was a director of IEA and that Choi "controlled" MK12 does not necessarily imply that they had a *direct financial interest*. The amended complaint fails to plausibly allege how the infringing activity *financially* benefitted Defendants Chval and Choi. As for Defendants Hammons, Regan, Fishman-Weaver, and Walter, Plaintiff makes no plausible, nonconclusory allegation that they in any way meet the elements of vicarious infringement. Like the contributory infringement claim, Plaintiff merely recites the elements without any facts to make its claim plausible. That is not enough.

Plaintiff has failed to state a plausible claim for contributory or vicarious infringement against any Defendant. This claim is dismissed without prejudice. Plaintiff may file an amended complaint to address these deficiencies within fourteen days.

### IV. Plaintiff has failed to plead a plausible RICO claim.

Defendants Chval, Choi, IEA, and Boonseng argue that Plaintiff has failed to state a plausible RICO claim because, among other things, they fail to allege the necessary predicate acts or a pattern of racketeering activity.[5] Plaintiff responds mostly by relying on a verbatim pasting of its allegations in its brief.

It is well-settled that "RICO does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015). Courts reject "attempts to convert ordinary civil disputes into RICO cases….RICO was not intended to apply to ordinary commercial fraud." *Id.* To state a claim under Section 1962(c) of RICO, Plaintiff must sufficiently plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

---

[5] Defendants also argue that the amended complaint fails to allege a domestic injury. The Court need not address this argument, as the other deficiencies are sufficient for dismissal.

14

The racketeering activity prong must be established by pleading two predicate acts committed by each Defendant. *Id.* at 358; *see In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003); *Raineri Constr., LLC v. Taylor*, 63 F. Supp. 3d 1017, 1031 (E.D. Mo. 2014); *Burke v. Ability Ins. Co.*, 926 F. Supp. 2d 1056, 1068 (D.S.D. 2013). And where, as here, the predicate acts involve allegations of fraud, Plaintiff must meet the heightened pleading standard of Rule 9(b) by pleading with particularity the "who, what, when, where, and how." *Crest. Constr. II, Inc.*, 660 F.3d at 353. The pattern element is "shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009). To establish continuity under the pattern element, Plaintiff must plead sufficient facts to show either: "[1] multiple predicate acts occurring over a substantial period of time (closed-end continuity) or [2] evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity)." *Crest Constr. II, Inc.*, 660 F.3d at 356.

The amended complaint fails to plead that each Defendant committed two predicate acts. It alleges in a conclusory fashion that the predicate acts are copyright violations, trade secret violations, and mail fraud. But it never identifies how *each* Defendant plausibly committed *any* such predicate acts. The amended complaint and Plaintiff's brief are completely silent on the facts showing an unlawful appropriation of trade secrets. And the supposed copyright violations fare no better: the allegations related to Defendant Chval's and Choi's supposed violations fail to state a claim (as established above) and there are no copyright violation allegations related to Defendants Boonseng and IEA.

The amended complaint also falls well short of pleading mail or wire fraud. The RICO portion of the amended complaint states that IEA and an unexplained entity named Taratuga

15

artificially inflated invoices sent to Plaintiff. But it does not explain *when* any such invoices were issued and *what* their contents were (e.g., what were the "inflated" charges?). The amended complaint also fails to explain specifically how Defendants Chval, Choi, and Boongseng were involved in this process. And other previous paragraphs of the amended complaint attribute inflated invoices to the *Curators*, not any of these Defendants. So the amended complaint fails to allege *any* plausible predicate acts, let alone two for each Defendant.

The amended complaint also fails to plausibly plead a pattern by failing to allege continuity. Closed-end continuity requires a showing of "related acts continuing over a period of time lasting at least one year." *Crest Constr. II, Inc.*, 660 F.3d at 357. But the copyright violations are alleged to have occurred in less than a year in 2019. Several of the alleged inflated invoices are undated and, even the dated ones that are attributed to the *Curators* (not the RICO Defendants), occurred in a window of around seven months. This is not enough to plead closed-end continuity. Nor has the amended complaint pled "open-end continuity" by establishing that "the predicate acts themselves involve a distinct threat of long-term racketeering activity or that the predicate acts constitute a regular way of conducting ongoing legitimate business or a RICO enterprise." *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008). The amended complaint makes clear that Plaintiff's relationship with Defendants (if any) was ended by the Curators' termination of their contract. So it is not plausible to infer that they will continue to receive any allegedly "inflated" invoices. And the amended complaint's only allegations about continued infringement is the conclusory request that they are entitled to relief for "any ongoing infringement." But the amended complaint fails to allege any *facts* that support this conclusory request.

Because the amended complaint fails to allege two plausible predicate acts by each Defendant or enough continuity to establish a pattern, Count IV is dismissed without prejudice. Plaintiff may file an amended complaint within fourteen days.

## Conclusion

For the foregoing reasons, Defendants' motions are GRANTED IN PART AND DENIED IN PART. Counts II and IV are dismissed without prejudice against all parties, but Plaintiff may file an amended complaint within fourteen days of this order.

**IT IS SO ORDERED.**

Date: February 22, 2022         /s/ Greg Kays
                                GREG KAYS, JUDGE
                                UNITED STATES DISTRICT COURT