IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HIGH SCHOOL SERVICOS EDUCACIONAIS, LTDA., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:21-CV-00029-DGK ) |
| MUN Y. CHOI, et al., | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case arises from a soured business relationship involving educational services provided to Brazilian schoolchildren. Plaintiff High School Servicos Educacionas, LTDA ("HSE") is a Brazilian corporation that contracted with the University of Missouri ("MU") to provide Brazilian K-12 schoolchildren with a curriculum and diploma that aligned with United States educational standards. This relationship allegedly allowed MU to create a pipeline for Brazilian students to matriculate to its university. Plaintiff alleges that the employees of Mizzou Academy[1]—an academic program within MU's College of Education and Human Development that worked with Plaintiff—allegedly infringed Plaintiff's copyrighted educational materials and unlawfully acquired Plaintiff's client list so it could do business directly with the Brazilian schools.

The Court previously dismissed various claims and defendants, ECF Nos. 76, 132, but the employees who allegedly committed infringing acts remain, including Defendants Angela Hammons, Tamara Regan, Kathryn Fishman-Weaver, and Stephanie Walter (collectively,

---

[1] Mizzou Academy has previously been referred to as "MK12" or "Mizzou K12." However, the parties uniformly refer to the program as Mizzou Academy throughout their summary judgment briefing. *See* Suggestions in Supp. at 5 n.2, ECF No. 203; Suggestions in Opp'n at 44, ECF No 229. The Court does the same here.

"Defendants"). Out of the seven claims in Plaintiff's Second Amended Complaint, five remain: copyright infringement, 17 U.S.C. § 101, against Defendants (Count I); copyright infringement under Brazilian law against Defendants (Count II); a violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, by Defendants (Count III); a procedural due process claim against Defendant Regan (Count V); and a substantive due process claim against Defendant Regan (Count VI).

Now before the Court are the parties' cross motions for summary judgment on Counts I, III, V, and VI. ECF Nos. 202, 220. Neither party moved for summary judgment on Count II. For the following reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion for partial summary judgment is DENIED. Finally, on its own motion, the Court extends the deadline for Defendants to move for summary judgment on Count II.

**Standard**

A movant is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). "In reaching its decision, a court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018). To survive summary judgment, the nonmoving party must substantiate his allegations with "sufficient probative evidence that would permit a finding in his

2

favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations and citations omitted).

**Undisputed Material Facts**

To resolve the motion, the Court must first determine the material undisputed facts. The Court has limited the facts to those that are undisputed and material to Defendants and the pending summary judgment motions on Counts I, III, V, and VI. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

Mizzou Academy is an academic program housed within MU's College of Education and Human Development. At all times relevant to this dispute, Defendants, as employees of Mizzou Academy, were employed and paid through MU.

Plaintiff HSE is an educational service provider within the Federative Republic of Brazil and does not maintain any offices in the Unites States.

In 2015, MU entered into various agreements with Plaintiff to provide educational services in Brazil through Mizzou Academy. These agreements ensured non-disclosure of certain information and outlined the intellectual property sharing and protections for the parties. None of the agreements defined the amount of money that either party would pay the other, but the parties reached an informal agreement for reasonable payments from Plaintiff to MU.

As part of the partnership, Mizzou Academy employees, including Defendants, provided yearly input into the joint "HSE-MK12 Operational Manual." Plaintiff alleges this input was rarely incorporated into the final document.

On May 12, 2018, Mizzou Academy billed Plaintiff $4,085,048, including retroactive billing from 2015–2017. On January 1, 2019, Mizzou Academy provided a replacement invoice that raised the amount to $5,162,638. These retroactive bills for "services" were not based on any written agreement. Plaintiff responded by saying the amounts had already been paid. The parties

3

dispute whether Defendant Regan prepared and submitted the invoices. Further, Plaintiff alleges Defendant Regan did not offer a procedure or method for HSE to challenge the amount in the invoices. Plaintiff has not paid either invoice.

In early 2019, MU decided to terminate its relationships with Plaintiff and to operate its own program in Brazil without Plaintiff's involvement. As part of this process, Mizzou Academy employee Tanya Haeussle began the process of creating a new Operational Manual.

On January 4, 2019, Haeussler sent a "Highly Confidential" email to Defendants. The email gave them a link to the "INTERNAL 2019 MK12 Operation Manual Google Doc" and told them to "go through the entire document and make sure any changes that are needed are included, including removing all HSE references." Ex. D at 1, ECF No. 203-4. The email indicated each Defendant had only "access to comment" in the document, *id.*, meaning they could only make suggested revisions via comment which could be accepted or rejected by Haeussler. Further, Haeussler was the only person with administrative rights to edit the content of the document.

On February 14, 2019, MU sent a letter to HSE stating their contract would be terminated by February 14, 2020.

On March 12, 2019, Hauessler sent an email stating that the changes to the Operational Manual were complete and that "in light of the IP concern with HSE, the 'Operational Manual' has been completely revised and we now have a DRAFT 2020 Mizzou Academy Handbook!" Ex. D at 1, ECF No. 203-6. The email further asked Defendants to "review the Handbook" and "turn on TRACK CHANGES if you make any edits and return to me." *Id*. During their review, Defendants allegedly removed references to Plaintiff from the Operational Manual but left in Plaintiff's copyrighted photograph and multiple pieces of text from Plaintiff.

4

## Discussion

Defendants argue summary judgment is appropriate because they are entitled to qualified immunity. Plaintiff does not dispute qualified immunity could apply to Defendants but argues their statutory and constitutional violations were clearly established, so Defendants are not entitled to qualified immunity.

Qualified immunity protects public officials, including employees of state universities, from "lawsuits where the officials' conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hovick v. Patterson*, 37 F.4th 511, 516 (8th Cir. 2022) (citation and internal quotations omitted); *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 862 (8th Cir. 2021) (applying qualified immunity to multiple university employees including the Coordinator for Student Organization Development and the Student Misconduct and Title IX Investigator). The qualified immunity analysis involves two inquires: "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Stark v. Lee Cnty., IA*, 993 F.3d 622, 625 (8th Cir. 2021). Plaintiff bears the burden at each step, and the Court may address either inquiry first. *See Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018); *Hovick*, 37 F.4th at 516.

"A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Hovick*, 37 F.4th at 516 (citation and internal quotations omitted). "This inquiry must be undertaken in light of the specific context of the case . . . [and the Court] must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 517 (cleaned up). Plaintiff can demonstrate a law is clearly established based on "existing circuit precedent with sufficiently similar facts," a "robust

5

consensus of . . . persuasive authority," or a "general constitutional rule that applies with obvious clarity." *Id.* (internal quotation marks omitted).

    **I.    Defendants are entitled to qualified immunity on Counts I and III.**

In Counts I and III, Plaintiff asserts claims for copyright infringement and violation of the DMCA against Defendants. Defendants maintain qualified immunity applies to these claims. Although the doctrine of qualified immunity typically arises under 42 U.S.C. § 1983, courts have applied qualified immunity to copyright cases. *See, e.g.*, *Issaenko v. Univ. of Minnesota*, 57 F. Supp. 3d 985 (D. Minn. 2014) (collecting cases); *Canada Hockey, LLC v. Marquardt*, No. 20-20530, 2022 WL 252186, at *3 (5th Cir. Jan. 26, 2022); *see also Allen v. Cooper*, 895 F.3d 337, 356 (4th Cir. 2018) (applying legislative immunity to a copyright case). Plaintiff does not dispute qualified immunity applies to copyright. *See* Suggestions in Opp'n at 79 (citing cases applying qualified immunity to copyright).

Accordingly, in light of Plaintiff's concession, and the persuasive authority cited above, the Court will analyze Defendants' liability for copyright infringement and violation of the DMCA under the doctrine of qualified immunity.

Because qualified immunity applies, Plaintiff bears the burden of showing, among other things, that any alleged violation was clearly established. *See Hovick*, 37 F.4th at 516. Plaintiff has failed to do so. Plaintiff states broadly that copyright law has been clearly established by statute and caselaw, but points to no "existing circuit precedent with sufficiently similar facts," a "robust consensus of . . . persuasive authority," or a "general constitutional rule that applies with obvious clarity." *Id.* at 517 (internal quotation marks omitted). The persuasive cases Plaintiff cites are distinguishable because they relate to banking database compilations, publishing part of a forthcoming book without permission, and a twenty-five-question survey. None of these cases clearly establishes a violation analogous to that alleged here. That is, it is not sufficiently clear

6

from existing caselaw that (1) leaving suggested revisions via comment, or (2) making red line edits in a document after being told it had been completely revised because of IP concerns constitutes copyright infringement or a violation of the DMCA—particularly when the allegedly infringing party provided yearly input into the document allegedly infringed upon.

Plaintiff offers three additional arguments for why Defendants should not be entitled to qualified immunity. These arguments are unavailing. First, Plaintiff claims there is evidence Defendants engaged in "intentional copyright infringement." *See* Suggestions in Opp'n at 80–81. But Plaintiff offers no evidence of improper motive or malice on behalf of the Defendants. In fact, the evidence Plaintiff cites is taken entirely out of context. Second, Plaintiff claims Defendants are not entitled to qualified immunity because Mizzou Academy—despite being housed in MU's School of Education and Human Development and staffed by MU employees—does not provide a government function. But Plaintiff provides no legal authority for its contention that employees of a state university should be denied qualified immunity just because their work benefits students outside the geographic boundaries of Missouri. As such, Defendants are entitled to qualified immunity. *See Intervarsity Christian Fellowship/USA*, 5 F.4th 855 (applying qualified immunity to multiple university employees). Third, Plaintiff argues qualified immunity does not apply because the Missouri General Assembly did not explicitly authorize MU to run Mizzou Academy, and therefore Defendants are not "'government officials' entitled to qualified immunity." *See* Suggestions in Opp'n at 83. But again, Plaintiff fails to cite any legal authority for its argument. Plaintiff's bare assertion that Mizzou Academy is an unauthorized academic program, and therefore, the MU employees that staff it are unprotected from qualified immunity is unfounded. Simply, none of Plaintiff's arguments are sufficient to deny Defendants qualified immunity.

Because Plaintiff has not established the alleged rights were clearly established at the time of the alleged violation, Defendants are entitled to qualified immunity on Counts I and III.

## II. Defendant Regan is entitled to qualified immunity on Counts V and VI.

In Counts V and VI, Plaintiff asserts both substantive and procedural due process violations against Defendant Regan because she "issued and/or approved the issuance of retroactive invoices." *See* Pl.'s Second Am. Compl. ¶¶ 133–46. Defendant Regan argues she is entitled qualified immunity.

As a threshold matter, Defendant Regan argues Plaintiff, as a foreign citizen, does not have any rights under the United States Constitution that could have been violated. *See* Suggestions in Supp. at 25 (citing *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020)). Plaintiff contends it is a "person" within the meaning of the Fourteenth Amendment and an "other person within the jurisdiction thereof" for purposes of § 1983. *See* Suggestions in Opp'n at 92. But Plaintiff cites no legal authority for these assertions, and the Court will not conduct legal research or construct legal arguments for them. *See United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008) ("It is not this court's job to research the law to support an appellant's argument." (cleaned up)); *see also Steves and Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) ("It is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel." (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)).

Even if Plaintiff has standing to assert these claims, it has not carried its burden establishing the alleged constitutional violation was clearly established. The cases Plaintiff cites are entirely distinguishable because they relate to stigmatizing accusations and impounding a vehicle. None of these cases clearly establishes a due process violation (substantive or procedural) within the specific context of sending invoices. That is, it is not sufficiently clear that preparing and sending

8

retroactive invoices constitutes a due process violation when the invoices were never paid and there is no evidence Plaintiff expressly challenged the amounts. Accordingly, Defendant Regan is entitled to qualified immunity on Count V and VI.

### III. Defendants may move for summary judgment on Count II.

Finally, there appears to be confusion over the status of Count II as neither party moved for summary judgment on the issue. In their opening brief, Defendants discuss the Court's Order denying Plaintiff's motion to apply Brazilian law to Count II and simply state "that claim is not addressed herein." *See* Suggestions in Supp. at 4 n.2. Although the Court indicated it was unlikely the claim could proceed in the absence of Brazilian law, nothing in the Court's Order dismissed the claim *sua sponte*, and thus, it is still live.

Because the Court's prior order may have led Defendants to believe incorrectly that Count II had already been dismissed, the Court on its own motion extends the deadline for Defendants to move for summary judgment on Count II. Defendants may move for summary judgment on Count II, and the parties shall adhere to the following briefing schedule: (1) Defendants may move for summary judgment on or before January 26, 2024; (2) Plaintiff shall file an opposition within seven (7) days of Defendants' opening brief; and (3) Defendants may file a reply within seven (7) days of Plaintiff's opposition.

### Conclusion

For the forgoing reasons, Defendants motion for summary judgment on Counts I, III, V, and VI is GRANTED. Plaintiff's motion for partial summary judgment is DENIED.

In addition, Defendants may move for summary judgment on Count II in accordance with the schedule described in Part III *supra*.

**IT IS SO ORDERED.**

Date:     January 16, 2024                    /s/ Greg Kays
                                              GREG KAYS, JUDGE
                                              UNITED STATES DISTRICT COURT